**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JUAN OSCAR DOMINGUEZ
MELGAREJO,[1]

Petitioner,

v. Case No. 3:26-cv-1178-WWB-LLL

WARDEN, NORTH FLORIDA
DETENTION CENTER, et al.,

Respondents.

---

**ORDER**

Petitioner, an immigration detainee at the California City Immigration Processing Center,[2] initiated this action by filing a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). Federal Respondents filed a Response (Doc. 6) with exhibits (Doc. Nos.6-1 to 6-5). The case is ripe for review.

## I. PETITION AND BACKGROUND

Petitioner, a native of Cuba, entered the United States on either April 28, 1980, or April 26, 1988.[3] (Doc. 1 at 6; Doc. 6-2 at 1-2). On July 12, 2000, an immigration judge

---

[1] It appears that Petitioner's name is misspelled on the Court's docket. While the docket reflects that Petitioner's name is "Juan Oscar Dominguez *Melsarejo*," Petitioner spells his name "Juan Oscar Dominguez *Melgarejo.*" (*See* Doc. 1 at 1 (emphasis added); *see also* Doc. 6-2 at 1-3; Doc. 6-3 at 1; Doc. 6-4 at 1; Doc. 6-5 at 1).

[2] When Petitioner initiated this case, he was detained at Baker County Detention Center in Macclenny, Florida, which is located within this Court's jurisdiction. (*See* Doc. 1 at 1).

[3] In their Response, Federal Respondents explain that "[t]he parties dispute [Petitioner's] manner of entry with Petitioner alleging that he was admitted on April 28,

ordered Petitioner removed. (Doc. 6-2 at 2). Immigration and Customs Enforcement ("**ICE**") twice detained Petitioner—in 2009 and 2021—and subsequently released him on orders of supervision ("**OSUP**") both times. (Doc. 6-4 at 1). On October 24, 2025, ICE revoked Petitioner's OSUP and detained him. (Doc. 6-2 at 4).[4]

Petitioner remains in ICE custody. He asserts that his prolonged detention has violated his rights under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and his due process rights under the Fifth Amendment. (Doc. 1 at 6–7). He also claims that ICE did not follow its own procedures when it revoked his OSUP. (*Id.* at 6). As relief, he seeks, *inter alia*, immediate release from immigration detention. (*Id.* at 7).

Because the Court finds that Petitioner is entitled to relief on his *Zadvydas* claim, it need not address his other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative"); *see, e.g.*, *Pena-Gil v. Lyons*, No. 25-CV-03268, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025)[5] ("Because the Court will grant petitioner's petition on the basis of his *Zadvydas* claims, . . . it need not reach petitioner's remaining claims that contest petitioner's detention.").

---

1980, and Federal Respondents asserting that he entered without lawful permission on April 26, 1988." (Doc. 6 at 1; *see* Doc. 1 at 6; Doc. 6-2 at 2).

[4] Although Petitioner states that ICE detained him on October 25, 2025, (Doc. 1 at 4), ICE records show that the detention occurred on October 24, 2025, (Doc. 6-2 at 4).

[5] Although district court orders are not binding, they may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

## II. ANALYSIS

Once an alien is ordered removed, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." During the removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2)(A).

The Supreme Court has held that indefinite detention of aliens raises serious constitutional concerns. *Zadvydas*, 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*." *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Here, ICE took Petitioner into custody on October 24, 2025, and he filed this case 194 days later on May 6, 2026. (Doc. 6-2 at 4). It is undisputed that Petitioner was in ICE custody for over six months at the time he filed this case. (*See* Doc. 6 at 4). Thus, the Court must consider whether Petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. Notwithstanding being ordered removed in 2000, Petitioner has remained in the United States on an OSUP for more than twenty-five years. (*See generally* Doc. 1). He states that removal is unlikely to occur in the reasonably foreseeable future because "Cuba has no repatriation treaty with the United States." (*Id.* at 7). He also appears to argue that Federal Respondents identified no change in circumstances that "render[s] removal [likely] in the near future." (*Id.* at 6).

Given the record, the Court finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Thus, as they concede, the burden shifts to Federal Respondents to "respond with evidence sufficient to rebut that showing." *Akinwale*, 287 F.3d at 1052; (*see also* Doc. 6 at 4).

Federal Respondents contend that "changes to Executive branch leadership, diplomatic relations worldwide, and shifts to U.S. immigration policy render [Petitioner's] removal to a third-country—as opposed to Cuba—likely." (Doc. 6 at 5). And to support their position, Federal Respondents attach a notice of removal dated October 24, 2025, communicating ICE's intention to remove Petitioner to Mexico. (Doc. 6-3 at 1). Yet they acknowledge that "[i]n light of this District's rulings in many previous cases presenting similar circumstances, the [Federal Respondents] anticipate[] that the Court will conclude that the evidence tendered lacks sufficient detail to meet the government's burden in justifying continued prolonged detention." (Doc. 6 at 5).

As Federal Respondents surmised, the Court finds their assertion that Petitioner's detention remains reasonable under *Zadvydas* because of the significant likelihood of removal in the reasonably foreseeable future is speculative and unsupported. They fail to explain how broad changes to Executive branch leadership, international diplomatic relations, and domestic immigration policy make it any more likely that Petitioner will be removed in the reasonably foreseeable future. (*See generally* Doc. 6). And the October 2025 document merely states that ICE "intends" to remove Petitioner. (*See generally* Doc. 6-3). It indicates neither whether Federal Respondents have obtained the necessary travel documents to effectuate Petitioner's removal nor whether any country has been willing to accept Petitioner. (*See generally id.*). Federal Respondents have thus failed to demonstrate that Petitioner's removal is any more likely than it was when he was detained on October 24, 2025.

Based on the evidence presented, the Court finds Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Thus, Petitioner is entitled to release from detention under *Zadvydas*.

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. The **Clerk** is **DIRECTED** to correct the docket to reflect the proper spelling of Petitioner's name – Juan Oscar Dominguez Melgarejo.
2. The Petition (Doc. 1) is **GRANTED** as to Petitioner's *Zadvydas* claim and otherwise **DENIED without prejudice as moot**.
3. Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order. Upon release, Respondents shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.
4. Respondent Warden's Motion to Dismiss (Doc. 5) is **DENIED as moot**.
5. The **Clerk** shall enter judgment granting the Petition, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on August 18, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Jax-7
C:
Counsel of Record
Juan Oscar Dominguez Melgarejo, A022788427